625 P.2d 946

**STATE of Arizona, Appellee,**

v.

**James BLEVINS, Appellant.**

**STATE of Arizona, Respondent,**

v.

**James Howard BLEVINS, Petitioner.**

**Nos. 1 CA–CR 3841, 1 CA–CR 4543–PR.**

Court of Appeals of Arizona,
Division 1,
Department A.

Feb. 3, 1981.

Rehearing Denied March 17, 1981.

Review Denied March 31, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Thinnes & Rawles by Thomas V. Rawles and Mark D. Petroff-Tobler, Phoenix, for appellant.

OPINION

WREN, Chief Judge.

Appellant, James Howard Blevins, was convicted by a jury of possession of a stolen

motor vehicle in violation of A.R.S. § 13–672.01.[1] Two prior felony convictions were also proven and appellant was sentenced to imprisonment for a term of not less than 5 nor more than 8 years. We reverse on the ground that the evidence failed to establish that appellant possessed a "motor vehicle" within the meaning of the statute, and that the trial court therefore erred in failing to grant his motion for judgment of acquittal.

The facts are as follows. On January 22, 1977, police officers from the Yavapai County Sheriff's Office seized what they described as a 1974 Ford pickup at the ranch of appellant's nephew. At that time, the truck was without a motor, front fenders, grill, radiator, hood, front axle, truck bed, or three of its wheels. It was taken by the officers to a storage yard where it was later identified by an identification number stamped inside the frame.

Further investigation revealed that when appellant purchased the truck in August, 1976, it was in substantially the same condition as when seized, except that it previously had a truck bed attached. Appellant possessed a receipt stating that he purchased the truck from a Joe Gonzales "for parts only." The evidence further reflected that appellant had paid $500 plus a Zuni bracelet.

The substance of appellant's argument is that the truck was in such a state of disrepair that it could not be considered a "motor vehicle" within the meaning of the statute. The state's response focuses on the design of the chassis and concludes that even though the truck may have been temporarily disabled, there was no showing that it was permanently inoperable, and therefore appellant's argument must fail. In essence, both arguments are evidentiary in nature, with the appellant stressing the lack of parts which make up the whole and the state stressing the original design.

Each position is supported by case law from other jurisdictions. For example, in State v. DeMarco, 157 N.J.Super. 341, 384

A.2d 1113 (1978), the defendant was found guilty of two counts of possession of a motor vehicle when two cars were seized at his body shop. The appellate court reversed the conviction on one court, holding that because the car was merely an inoperable shell, it had lost its characteristic as a motor vehicle. The second count was affirmed because, even though the car was partially disassembled when seized, it was only temporarily inoperable. State v. Mainwaring, 175 Oh.St. 497, 196 N.E.2d 584 (1964), and People v. Matusik, 63 Mich.App. 347, 234 N.W.2d 517 (1975), also recognized that an automobile may lose its character as a "motor vehicle" when it has been sufficiently dismantled, although in those cases the minor state of disrepair was considered a temporary status.

In support of the state's position is Parnell v. State, 151 Ga.App. 756, 261 S.E.2d 481 (1979), where a car with an inoperative engine, no fenders, transmission or radiator, and which had not been registered, tagged or inspected, was still considered a motor vehicle for purposes of sentencing under the Georgia theft statute because its basic design was that of an automobile. See also State v. Ridinger, 364 Mo. 684, 266 S.W.2d 626 (1954), which held a bus to be a "motor vehicle" within the Missouri tampering statute, even though it had no current state license and was being used as a source of spare parts with no intention on the part of the owner for further use as a bus.

Turning to Arizona law, we first note that Title 13, Arizona's Criminal Code, does not contain a definition of the term "motor vehicle". Nevertheless, we may look to the definition provided in Title 28 dealing with transportation, since A.R.S. § 13–672.01 was taken from former A.R.S. § 28–1423. See State v. Thomas, 110 Ariz. 27, 514 P.2d 1023 (1973); State v. Cain, 27 Ariz.App. 441, 555 P.2d 1129 (1976); and State v. Robinson, 9 Ariz.App. 379, 452 P.2d 706 (1969).

A.R.S. § 28–101(24), as amended 1974, provides:

---

1. Unless otherwise stated, all references to Arizona's Criminal Code are prior to its 1978 revision.

"Motor vehicle" means any self-propelled vehicle . . .

A.R.S. § 28–101(55), as amended 1974, then defines vehicle as follows:

"Vehicle" means a device in, upon or by which any person or property is or may be transported or drawn upon a public highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks.

Thus, the definition focuses on its generic usage, i. e., a device, other than railcar, designed to carry people or property upon the highways and self-propelled as opposed to human powered. Webster's New Collegiate Dictionary (1975), defines motor vehicle as "an automotive vehicle not operated on rails; esp: one with rubber tires for use on highways."

Common sense dictates that at some point during the manufacturing of an automobile, it takes on the characteristic of a motor vehicle. Similarly, it can be so wrecked or dismantled that it loses that characteristic. This is recognized in A.R.S. § 28–321, which requires an insurance company to surrender title of a motor vehicle to the Motor Vehicle Division when it is declared "totalled", and A.R.S. § 28–323, requiring the owner of a motor vehicle to surrender the certificate of title, registration card and number plates, and obtain a permit before dismantling or wrecking it. In addition, A.R.S. § 28–321 as amended in 1980, requires a salvage title or dismantling permit for a "salvage vehicle" which is defined as a vehicle which is wrecked or damaged beyond repair.

This court has previously recognized in *State v. Robinson, supra,* that a vehicle "may be so demolished or dismantled that it no longer can be considered a motor vehicle under our statutes," although under the facts presented, the temporary defect rendering the vehicle inoperable did not take it out of the definition of a "self-propelled vehicle." We therefore hold that the question of when a device becomes a motor vehicle or ceases to be a motor vehicle for purposes of A.R.S. § 13–672.01 depends upon the statutory definition of a motor vehicle under A.R.S. § 28–101 and the factors relied upon in the cases cited above; i. e., the state of disrepair, including the amount of effort required to make the vehicle operative, the original design of the device and the apparent intended use in its present condition.

With these criteria in mind, we now turn to the appellant's argument that the trial court erred in failing to grant his motion for judgment of acquittal. A judgment of acquittal should be granted only where there is no substantial evidence upon which a jury could determine that the defendant has committed the crime charged. *State v. Mosley,* 119 Ariz. 393, 581 P.2d 238 (1979); *State v. Money,* 110 Ariz. 18, 514 P.2d 1014 (1973). Here, the facts are not in dispute that the vehicle was in a substantial state of disrepair. As noted earlier, all that remained was a mere shell of a truck. Without a motor, wheels, radiator, or front axle, the shell was far from being capable of self-propulsion or carrying persons or property upon the highways. In addition, the evidence did not reflect that this state of disrepair was temporary and its apparent intended use was for parts only. If the truck was capable of being readily restored to use, the state failed to present any evidence to that effect.

The judgment and sentence are reversed, and this matter is remanded to the trial court with directions to enter an order granting a judgment of acquittal. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

CONTRERAS, P.J., and FROEB, J., concur.