Argued and submitted January 16, 2020, affirmed October 13, 2021, petition for review denied March 24, 2022 (369 Or 505)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TRACY LEE PHILLIPS,
*Defendant-Appellant.*

Coos County Circuit Court
18CR01187; A167826

501 P3d 537

In this criminal case, defendant appeals his conviction of first-degree theft and unauthorized use of a vehicle (UUV). Defendant argues on appeal that the stolen utility trailer is not a vehicle within the meaning of the UUV statutes, and thus the trial court erred by denying his motion for judgment of acquittal and instructing the jury that the trailer was a vehicle. In a separate assignment, defendant argues that the trial court erred by failing to provide the jury with a lesser-included instruction of third-degree theft, on the basis that the state did not prove that the trailer was worth more than $1,000, as required for first-degree theft. *Held*: The text, context, and applicable legislative history demonstrated that the term vehicle, as used in the UUV statute, includes non-mechanized conveyances, including the utility trailer in this case. The trial court therefore did not err by denying the motion for judgment of acquittal and by instructing the jury that the trailer was a vehicle under the UUV statute. The conflicting evidence about the trailer's value presented a fact question for the jury as to whether the trailer was worth more than or less than $1,000, and therefore, the court erred by failing to instruct the jury for the lesser-included third-degree theft crime. However, because in this case the jury's determination of value would not have been changed by receiving the lesser-included instruction, the court's error was not harmful to defendant.

Affirmed.

Martin E. Stone, Judge.

Joshua B. Crowther, Deputy Chief Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and Powers, Judge, and Sercombe, Senior Judge.

SERCOMBE, S. J.

Affirmed.

**SERCOMBE, S. J.**

Defendant appeals a judgment convicting him of theft in the first degree, ORS 164.055, and unauthorized use of a vehicle (UUV), ORS 164.135.[1] On the UUV charge, defendant contends that the trial court should not have instructed the jury that the purloined utility trailer was a "vehicle" under the UUV statute, and that the court should have otherwise acquitted him of the UUV charge because his towing of a utility trailer used to transport landscaping equipment was not the use of a "vehicle" under ORS 164.135. On the first-degree theft charge, defendant claims that the trial court erred in failing to instruct the jury on a lesser-included theft in the third-degree charge. We conclude that the jury was properly instructed on the UUV charge and that defendant was culpable for the UUV offense because "vehicle," as used in the UUV statute, includes a non-mechanized trailer used for carrying or transporting personal property. We also conclude that the court erred in failing to instruct the jury of the lesser-included theft charge, but that the error was harmless.[2] Accordingly, we affirm.

Early in the morning of October 28, 2017, defendant stole a utility trailer from the South Coastal Business Employment Corporation (SCBEC), attaching the utility trailer to his truck and leaving the business premises with it. The trailer was fully enclosed with a skylight on the roof and was designed to be towed behind a motor vehicle. SCBEC used the utility trailer to transport landscaping equipment and supplies for its youth work-preparedness program.

---

[1]  At the time of the crime, ORS 164.135(1) provided, in part, that,

"(1)  A person commits the crime of unauthorized use of a vehicle when:

"(a)  The person takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner."

ORS 164.135 has since been amended by Oregon Laws 2019, chapter 530, section 1, to among other things, remove "rides in" from the list of prohibited conduct. We cite and construe ORS 164.135 (2017) in this opinion.

[2]  In a supplemental brief, defendant contends that the court committed structural error by instructing the jury that it could return a nonunanimous guilty verdict. That contention was rejected by the Oregon Supreme Court in *State v. Flores Ramos*, 367 Or 292, 319, 478 P3d 515 (2020). Further, the record reveals that each verdict was unanimous; therefore, despite the erroneous jury instruction allowing for nonunanimous verdicts, the error in this case was harmless beyond a reasonable doubt. *Id.* at 334.

Defendant was charged with theft in the first degree, ORS 164.055,[3] for "theft of a utility trailer, of the value of $1,000 or more," and unauthorized use of a vehicle, ORS 164.135(1)(a), based on the allegation that he did "take, operate, exercise control over, or otherwise use a utility trailer, without the consent of the owner." At trial, defendant moved for a judgment of acquittal on the UUV charge, arguing that the utility trailer was not a "vehicle" for purposes of the UUV statute. That motion was denied. Defendant objected to the giving of Uniform Criminal Jury Instruction 1800 on the UUV charge, and that objection was overruled by the trial court, with the court giving this instruction to the jury:

> "Unauthorized Use of a Vehicle by Taking. * * * In this case to establish the crime of unauthorized use of a vehicle, the State must prove beyond a reasonable doubt the following elements: The act occurred on or about October 29 and October 30, 2017; [defendant] *knowingly took, operated, exercised control over, or otherwise used a vehicle, a utility trailer, as described in the charge*, which was owned by South Coast Business Employment Corporation; and [defendant] knowingly did not have the consent of the owner.

> "Definitions. Definition of *a vehicle includes such things as trailers*, sailboats, gliders, and semi-trailers in addition to motor propelled vehicles. It is every device in, upon, or by which any person or property is or may be *transported or drawn*."

(Emphases added.)

Defendant contended below, and renews his contention on appeal, that the jury instruction misstated the law, and that he was entitled to a judgment of acquittal, because the utility trailer was not a "vehicle" under the statute. Defendant argues that the text of ORS 164.135(1)(a)—specifically the proscription of the use of another's "vehicle, boat, or aircraft"—suggests a legislative intent that "vehicle"

---

[3] ORS 164.055(1)(a) provides, in relevant part:

"(1) A person commits the crime of theft in the first degree if, by means other than extortion, the person commits theft as defined in ORS 164.015 and:

"(a) The total value of the property in a single or aggregate transaction is $1,000 or more."

be a self-propelling, mechanized piece of motor equipment capable of transporting goods or persons on the highway. He reasons that boats and aircraft are self-propelled and that vehicles should be similarly categorized because of their association with boats and aircraft in the text of ORS 164.135(1)(a).[4]

Relying on *State v. Eastep*, 361 Or 746, 399 P3d 979 (2017), defendant argues that the Supreme Court requires a "vehicle" under the statute to be equipment that is capable of being operated, and that operation necessarily requires self-propulsion as a means of conveyance. Thus, a trailer is not a "vehicle" because it does not operate by itself to convey persons or property. Defendant concludes that the legislative history of ORS 164.135(1)(a) supports that view of the statute.

The state responds that the plain meaning of "vehicle" does not include self-propulsion as a necessary quality, that the legislature distinguished "motor vehicles"— vehicles that are self-propelled—from "vehicles" in the text of ORS 164.135(1)(a) and related statutes so that the meanings of both words are not the same, and that the legislative history of the term supports a broader meaning. We agree with the state's reasoning.

Our role in construing the term "vehicle" in ORS 164.135(1)(a) is to determine the meaning that the legislature most likely intended, based on an examination of statutory text, other statutory context, legislative history, and applicable rules of construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We are not constrained in the resolution of this legal question by the determination of the trial court or the contentions of the parties. *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties.").

The Supreme Court construed the meaning of "vehicle" in ORS 164.135(1)(a) in *Eastep*. In that case, the

---

[4] Defendant relies on the principle of "*noscitur a sociis*" which is an "old maxim which summarizes the rule both of language and of law that the meaning of words may be indicated or controlled by those with which they are associated." *State v. Walker*, 356 Or 4, 15 n 5, 333 P3d 316 (2014).

defendant was convicted of UUV for selling another person's inoperable and disrepaired truck for scrap. The court concluded that the ordinary meaning of "vehicle" under ORS 164.135 was "broad enough to include cars and trucks that may not currently be in operating condition, even if in need of extensive repairs," but that in light of an earlier case construing the meaning of "vehicle" in the UUV statute, the condition of a car or truck must be operable to the extent that it "not be in such a state of disrepair as to constitute a 'wrecked' vehicle." 361 Or at 757.

That intended meaning of "vehicle" with respect to its disrepair or operability is immaterial to the question at hand—whether a device must be capable of transporting persons or property on its own to be a "vehicle" under ORS 164.135(1)(a). A trailer may be operable whether or not it is self-propelled. It can be operated through manipulation by a person or a separate device. Here, the utility trailer was operated by defendant by towing it along the street.[5]

*Eastep*'s discussion of the plain meaning of "vehicle" and its legislative history is instructive. The court began its textual analysis by explaining,

> "*Webster's* defines a 'vehicle' as '**5** : a means of carrying or transporting something : CONVEYANCE: as **a** : a carrier of goods or passengers \* \* \* *specif* : MOTOR VEHICLE \* \* \* **b** : a container in which something is conveyed \* \* \* **c** : a piece of mechanized equipment \* \* \* **d** : a propulsive device.' *Webster's Third New Int'l Dictionary* 2538 (unabridged ed 2002). Other dictionaries supply similar definitions. *See, e.g., Funk & Wagnalls New Standard Dictionary of the English Language* 2637 (1963) (similarly, '[t]hat in or on which anything is or may be carried; \* \* \* conveyance').

> "Those definitions do suggest that a 'vehicle' is defined in terms of its function, namely, transportation."

361 Or at 751 (omissions in *Eastep*) (footnote omitted).

As applied here, those definitions suggest that a "vehicle" is nothing more than a means for carrying or

---

[5] Under the reasoning in *Eastep*, if the trailer were in such a state of disrepair that it could not be manipulated or operated and was useful only as scrap, it would not be a "vehicle" capable of unauthorized use. The operability of the trailer is beside the point here.

transporting persons or property. *Webster's* defines the word in precisely that way ("a means of carrying or transporting something"), with a "motor vehicle" or "mechanized equipment" or "propulsive device" being types of a "vehicle," rather than its necessary essence. Under the plain meaning of the term, a trailer—or a horse-drawn carriage, parade float, or any other towed conveyance—would be a "vehicle" because it functions to carry or transport persons or property. A device does not need to be self-propelled in order to carry or transport persons or property.

The *Eastep* court then analyzed the meaning of "vehicle" in ORS 164.135(1)(a) in light of the context of the statute, including the "prior versions of the statute, as well as its enactment history." 361 Or at 754. The most immediate context of the term "vehicle" in ORS 164.135(1)(a) are the remaining words in the statute. *Force v. Dept. of Rev.*, 350 Or 179, 188, 252 P3d 306 (2011) ("'[C]ontext' includes, among other things, other parts of the statute at issue."); *see also* ORS 174.010 ("[W]here there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.").

As noted, ORS 164.135(1)(a) defines the UUV crime as when a person "takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner." Defendant argues that the statute broadly covers "joy-riding," and, accordingly, narrowly construes "vehicle" to mean devices that can be joyfully ridden, that is, that are self-propelled by manipulation of an occupant of the vehicle. Such a construction necessarily implies that unauthorized use only includes situations where a person is present in the vehicle as an operator or a passenger when the vehicle is being operated by another, or—in the words of the statute—when a person "operates *** [or] rides in" the vehicle.

But the statute proscribes more than that. It defines UUV to include instances when a person "takes, *** exercises control over, *** or otherwise uses another's vehicle." Relying upon the legislative history of the statute, we noted in *State v. Douthitt*, 33 Or App 333, 338, 576 P2d 1262 (1978), that

"[t]he purpose of the language, 'takes, operates, exercises control over, rides in or otherwise uses,' is to prohibit not only the taking or driving of another's vehicle without permission, but, also, to prohibit any unauthorized use of the vehicle."

When a person tows a means of conveyance, that person takes, exercises control over, and uses the device in ways other than operating it or riding in it. Construing "vehicle" to include devices that are not self-propelled gives force to the entire wording of the statutory section. "As a general rule, we construe a statute in a manner that gives effect, if possible, to all its provisions." *Crystal Communications, Inc. v. Dept. of Rev.*, 353 Or 300, 311, 297 P3d 1256 (2013). Defendant's suggested limitation of "vehicle" to a particular type of vehicle and "use" as confined to the operation of that type of vehicle is inconsistent with the context of the statute's more broadly written text.

Defendant's construction of the meaning of "vehicle" in ORS 164.135(1)(a)—as excluding trailers, carts, wagons, carriages, or other non-self-propelled devices—is inconsistent with the legislative history of the statute. ORS 164.135 was enacted as part of a revised criminal code recommended by the Criminal Law Revision Commission. Or Laws 1971, ch 743, § 134. As noted by *Eastep*,

"A subcommittee of the commission addressed a proposed draft of what is now ORS 164.135, based on the Model Penal Code, § 223.9, and New York Revised Penal Law, § 165.05 (1965). Most of its discussion concerned the types of vehicles that would be included—specifically, whether the statute should be limited to 'motor-propelled' vehicles or should embrace other vehicles such as gliders, sailboats, and bicycles. *See generally* Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, Apr 6, 1968, Tape 2, Side 2 (statements of committee members and Commission Project Director Paillette). Ultimately, the subcommittee agreed to include gliders and sailboats, but not bicycles, and so it agreed on wording that referred to a 'vehicle, boat, or aircraft.' *Id.*

"The subcommittee also briefly discussed the prohibited conduct set out in the proposed draft, which included taking, operating, exercising control over, riding in, or

otherwise using another's vehicle, boat, or aircraft. Project Director Paillette explained that the proposed legislation would broaden the conduct currently prohibited in the existing joy-riding statute. The subcommittee then discussed whether 'entering' a vehicle without consent, also prohibited under then-existing law, would amount to unauthorized use. Members tentatively agreed that, to violate the UUV statute, a person would need to 'exercise control,' or otherwise start or somehow 'use' the vehicle. Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, Apr 6, 1968, Tape 2, Side 2 (statements of Rep Elder, Paillette, and others); *see also* Tape Recording, Criminal Law Revision Commission, July 19, 1968, Tape 9, Side A (statement of Sen Burns, Chair of Subcommittee No. 1)."

361 Or at 756-57.

The commentary to the new Criminal Code explained:

"This section covers the 'joy-riding' type of offense where the actor makes unauthorized use of another's vehicle but without the intent to steal it or permanently deprive the owner of its use. The purpose of the language, 'takes, operates, exercises control over, rides in or otherwise uses,' is to prohibit not only the taking or driving of another's vehicle without permission but also, to prohibit *any* unauthorized use of the vehicle.

"The first draft of the section limited its coverage to 'motor-propelled' vehicles only; however, the Commission believed that the proposal should *also protect owners of such things as trailers*, sailboats and gliders."

Commentary to Criminal Law Revision Proposed Oregon Criminal Code, Final Draft and Report § 134, 142 (July 1970) (second emphasis added).[6]

Defendant argues that "trailers" in this context means conveyances occupied by persons "such as a travel trailer or motor home." That begs the question. The plain

---

[6] We note that the April 6, 1968, subcommittee discussion of expanding the scope of the unauthorized use statute to cover "vehicles," as opposed to "motor-propelled vehicles," explicitly contemplated that the expanded coverage would include "vehicles such as gliders, balloons, sailboats, and horse drawn vehicles." Minutes, Criminal Law Revision Commission, Subcommittee No. 1, Apr 6, 1968, p 12. Horse-drawn vehicles are carts or trailers.

meaning of "vehicle" noted earlier was "a carrier of goods or passengers." There is no sound textual or contextual reason to confine "such things as trailers," as a species of "vehicle," to something less, as a carrier only of passengers.

Thus, the legislative history of ORS 164.135(1)(a) confirms that the term "vehicle" includes "such things as trailers" and that the statute proscribes a broad range of conduct, including towing as a method of exercising control over a means of conveyance. The trial court did not err in instructing the jury that "vehicle" included a "utility trailer," and in denying defendant's motion for judgment of acquittal.[7]

Defendant also assigns error to the failure of the trial court to give a lesser-included theft in the third-degree jury instruction. Under ORS 164.043, a person commits the crime of theft in the third-degree if "the person commits theft as defined in ORS 164.015" and "the total value of the property in a single or an aggregate transaction is less than $100." Defendant contended at trial that the evidence did not prove that the trailer was worth more than $1,000, a benchmark necessary to prove the charged crime of theft in the first degree.[8] Defendant asserted that the jury could nonetheless find that the trailer was worth less than $100, so that the jury should have been instructed on the lesser-included offense of third-degree theft.[9] "We review refusal to give a jury instruction for legal error and view the evidence in the light most favorable to the party that requested the

---

[7] The Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 134, 143 (July 1970), while noting that the "'taking or using' statute does not define or incorporate by reference any other statutory definition of 'vehicle,'" notes a definition of "vehicle" in the motor vehicle code at the time (that "vehicle" includes "every device in, upon or by which any person or property is or may be transported or drawn"). That suggests that the drafters of ORS 164.135(1)(a) intended "vehicle" to include devices by which property may be drawn or towed.

[8] As noted, ORS 164.055(1)(a) provides that a person commits theft in the first degree by committing theft where the "total value of the property in a single or aggregate transaction is $1,000 or more."

[9] There was no evidence that the trailer had any particular value that was less than $1,000. Defendant did not request a jury instruction for second-degree theft. Under ORS 164.045, a person commits the crime of theft in the second degree if the person commits theft and "the total value of the property in a single or an aggregate transaction is $100 or more and less than $1,000."

instruction." *State v. Whiteside*, 303 Or App 427, 428, 464 P3d 452, *rev den*, 366 Or 827 (2020).

A criminal defendant is entitled to a lesser-included jury instruction when there is "evidence, or an inference which can be drawn from the evidence, which supports the requested instruction so that the jury could rationally and consistently find the defendant guilty of the lesser offense and innocent of the greater." *State v. Washington*, 273 Or 829, 836, 543 P2d 1058 (1975). That right is conferred explicitly by ORS 136.465:

> "In all cases, the defendant may be found guilty of any crime the commission of which is necessarily included in that with which the defendant is charged in the accusatory instrument or of an attempt to commit such crime."[10]

ORS 136.460 supplements the general rule of ORS 136.465. Or Laws 1997, ch 511, § 1. ORS 136.460 more particularly applies when, as here, the lesser-included charge is a different degree of, or an attempt to commit, the same criminal offense. The statute requires a particular order of deliberation for the charges:

> "(1)   Upon a charge for a crime consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the accusatory instrument and guilty of any degree inferior thereto or of an attempt to commit the crime or any such inferior degree thereof.
>
> "(2)   The jury shall first consider the charged offense. Only if the jury finds the defendant not guilty of the charged offense may the jury consider a lesser included offense. If there is more than one lesser included offense, the jury shall consider the lesser included offenses in order of seriousness. The jury may consider a less serious lesser included offense only after finding the defendant not guilty of any more serious lesser included offenses."

ORS 136.460.

Defendant contends that the most favorable inference from the evidence would allow the jury to find that defendant was guilty of third-degree theft because the

---

[10] ORS 136.465 was originally codified as ORS 136.660 in the 1953 Oregon Revised Statutes.

utility trailer only had nominal value that necessarily was less than $100. The SCBEC manager testified at the April 2018 trial that the trailer was purchased in 2008 for $2,000. She added that it was not used very often although it was used initially "a lot." The prosecutor inquired further:

"Q   Okay. And how much is that utility trailer worth?

"A   When we had the insurance agency, because it was insured, review it for our loss, their estimate was $2,195."

That was the only evidence of the value of the trailer. Defendant testified that he did not know how much the trailer was worth, but he disputed that it was worth $2,000. On cross-examination of defendant about his claim that he borrowed the trailer by permission, he testified that he did not know the value:

"Q   Didn't you find that suspicious, that someone you've never met face to face, got permission over a phone, said he was going to meet you that morning, didn't show up when you took this $2,000 utility trailer?

"A   I wouldn't say it was valued at that. I don't know how much it's valued at."

Defendant contends that the evidence—that he believed the trailer was worth something different than $2,000 and that the trailer was purchased nine years previously for that sum—was sufficient to create a jury question on whether the value of the trailer was less than $100 and on what degree of the crime of theft for which he might be accountable. The state concedes that the court erred in failing to give a lesser-included instruction for third-degree theft, and, for purposes of this opinion, we accept that concession.

Relying on *State v. Zolotoff*, 354 Or 711, 320 P3d 561 (2014), the state argues that the error was harmless. In *Zolotoff*, the Supreme Court concluded that the trial court erred in failing to give a jury instruction of attempted possession of a weapon following a trial on possession of a weapon by an inmate and that the error was prejudicial to the defendant. The court noted that *State v. Naylor*, 291 Or

191, 197-99, 629 P2d 1308 (1981), held that the failure to give a lesser-included charge instruction could be prejudicial when a reviewing court was "unable to say what the verdict would have been had the theory of the defense been properly presented to the jury." That was because a jury might conclude that the defendant might be guilty of "some apparent violation of the criminal code but not of the crime charged" but be coerced into "finding a defendant guilty of a crime greater than that which the jury believes he has committed." *Id.* at 199. *Naylor* alternatively reasoned that the failure to give a lesser-included instruction could be prejudicial because the case would be "submitted to the jury without the complete statement of the law necessary for the jury to properly exercise its function in the trial of [the] defendant." *Id*. at 197-98.

    *Zolotoff* reasoned that the subsequent adoption of ORS 136.460, requiring that the jury first find the defendant not guilty of the charged offense before considering the lesser included offense of a different degree or an attempted offense, undercut the "unable to say" and coercive effect rationale for finding prejudice announced in *Naylor*:

> "[W]e agree that ORS 136.460(2) supplants that aspect of the court's reasoning. The "acquittal first" procedure under ORS 136.460(2) mandates that jurors decide whether a defendant is guilty of the charged offense before they consider a lesser-included offense, and jurors must follow that order of deliberation, even if it is, to some extent or in some sense, coercive.

> "\* \* \* \* \*

> "With the enactment of ORS 136.460(2), an appellate court appropriately may reason that, had the jury received an instruction on a lesser-included offense, it also would have received an instruction under ORS 136.460(2). Further, an appellate court also may reason that the jury would have followed that instruction and made a finding on the charged offense before considering the lesser-included offense. \* \* \* As a result, there may be many instances in which an appellate court will be able to conclude from the evidence, the arguments, and the instructions that the jury would have reached the same verdict on the charged offense even if it also had received instruction on the lesser-included offense. In other words, in many instances,

a trial court's failure to give a lesser-included instruction, although error, may be harmless error."

354 Or at 716, 718-19 (citation omitted).

Under *Perida-Alba v. Coursey*, 356 Or 654, 342 P3d 70 (2015), this case presents one of those instances. In *Perida-Alba*, the Supreme Court explained some of the instances suggested in *Zolotoff* in which an appellate court will be able to conclude from the evidence, the arguments, and the instructions that the jury would have reached the same verdict on the charged offense even if it also had received instruction on the lesser-included offense. In *Perida-Alba* the petitioner sought post-conviction relief, claiming ineffective assistance of counsel because of counsel's failure to request a jury instruction on a lesser-included robbery offense to the charged offense of first-degree robbery. The elements of both crimes were the same except that first-degree robbery required the additional element that the person "uses or attempts to use a dangerous weapon."[11]

The petitioner claimed that there was no reason to fail to request a lesser-included charge instruction and that the failure to do so enhanced the likelihood that the jury would convict him of the greater offense. The post-conviction court agreed and granted post-conviction relief and we affirmed that decision.

The Supreme Court reversed on review and examined the circumstances in which "courts have recognized *** that the absence of an instruction on a lesser-included offense can affect the jury's verdict." 356 Or at 664. Relying upon guidance from *Beck v. Alabama*, 447 US 625, 100 S Ct 2382, 65 L Ed 2d 392 (1980), the court explained:

"*Beck* recognized that the absence of an instruction on a lesser-included offense can impermissibly enhance the risk of an unwarranted conviction when two factors are present. First, the element that elevates the lesser-included offense to the greater one must be doubtful. Second, and

---

[11] Under ORS 164.395, a person commits third-degree robbery,

"if in the course of committing or attempting to commit theft *** the person uses or threatens the immediate use of physical force upon another person with the intent of: [p]reventing or overcoming resistance to the taking of property or to retention thereof immediately after taking."

more importantly, there must be substantial evidence of a serious lesser offense. In those circumstances, the absence of an instruction on the lesser offense puts the jury to the choice of either convicting the defendant of a doubtful greater offense or acquitting the defendant altogether, despite the defendant's apparent guilt of a serious lesser-included offense."

356 Or at 665 (footnote omitted).

*Perida-Alba* is instructive here. The element of first-degree theft that lifted the theft to that degree—that the trailer was worth more than $1,000—was not doubtful. The manager testified that the trailer was purchased nine years previously for $2,000 and that it had not been used very often other than after the initial purchase. The owner's insurer gave the trailer a present value of $2,195. The evidence that the trailer was worth less ("I wouldn't say it was valued at [$2,000]") was not substantial.[12] In light of that evidence, the jury's verdict demonstrates that it would not have considered the offense of third-degree theft even if it had been instructed on that offense.

Nor was the jury confused in reaching its verdict because of the absence of an explanation that it could reach a different verdict. As recognized in *Zolotoff*,

"[t]here may be circumstances in which the elements of the charged crime are clearer when they are viewed in contrast with the elements of a lesser-included offense. So, for instance, an instruction on the elements of a lesser-included offense may disclose a legal distinction that is not otherwise patent and that would be particularly helpful to the jury in deciding whether the defendant is in fact guilty of the charged offense. In determining whether an error in failing to instruct on a lesser-included offense is harmless, the question for an appellate court is whether the court can conclude from the evidence, arguments, and instructions in the particular case that the jury would have reached the same conclusion had it been correctly instructed."

354 Or at 719.

---

[12] Under OEC 701(1) the opinion of a lay witness must be "[r]ationally based on the perception of the witness." Defendant's testimony about what he "wouldn't say" was not an opinion as to any particular value, much less a value of less than $100. There was no evidentiary basis for any lay opinion of value, a description of defendant's perception of the trailer and an explanation of its perceived value.

It would not be particularly helpful to the jury in deciding whether the trailer was worth more than $1,000 (to justify a first-degree theft instruction) for it to be instructed that the trailer could have been worth less than $100 (to justify conviction of a theft of a lesser degree). The jury was asked to determine the value of the trailer in deciding whether defendant was guilty of first-degree theft. That determination would not be easier or different if the jury was told it could make *the same determination* in deciding whether defendant was guilty of third-degree theft, with a ceiling of $100. The calculation of the value of the trailer was just that—without regard to whether first-degree or third-degree theft was charged.

This is not a case where a jury determination of the operation of a charged offense would be informed by comparison with a qualitatively different, lesser-included offense. The giving of the third-degree theft jury instruction would not inform the jury on how to resolve the valuation question. Consequently, the failure to give that instruction did not harm defendant and provide a basis for reversal.

Affirmed.