Argued and submitted June 9, affirmed December 30, 2015, petition for review denied May 26, 2016 (359 Or 667)

VECTOR MARKETING CORP.,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT,
*Respondent.*

Office of Administrative Hearings
T71599; A155527

365 P3d 686

Jeana Wines argued the cause for petitioner. With her on the briefs were Rebecca A. Watkins and Sather, Byerly & Holloway, LLP.

Jona J. Maukonen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

**TOOKEY, J.**

Petitioner, Vector Marketing Corp. (Vector), seeks judicial review of a final order of the Employment Department that determines, among other things, that Vector was an employer of salespeople of Cutco cutlery from the fourth quarter of 2008 to the fourth quarter of 2011 and, accordingly, was required to pay unemployment insurance tax. Vector contends that its arrangement with the salespeople, who performed demonstrations of the products in consumers' homes and were paid, in part, based on the number of demonstrations performed, is excluded from the general definition of "employment" in ORS 657.030(1). In Vector's view, the arrangement with the salespeople falls under ORS 657.087(2), which provides an exception to employment for certain services performed by direct sellers of consumer goods in the home.[1] As explained below, we conclude that the exception to employment set forth in ORS 657.087(2) does not apply to compensation based on the number of demonstrations performed and, thus, Vector's arguments fail. We therefore affirm.

Before stating the facts, we pause to note that, in its first assignment of error, Vector challenges factual findings that the administrative law judge (ALJ) made regarding the compensation at issue here, which was made under Vector's "minimum commission program." Vector's challenge relates to the operation of the minimum commission program. However, the ALJ's findings are supported by substantial evidence in the record and, in our view, are also consistent with Vector's view of the program. *See* ORS 657.684 ("Judicial review of decisions under ORS 657.683 shall be as provided for review of orders in contested cases in ORS chapter 183 * * *."); *Portland Columbia Symphony v. Employment Dept.*, 258 Or App 411, 420, 310

---

[1] ORS 657.087(2) provides, in part:

"'Employment' does not include service performed:

"* * * * *

"By individuals to the extent that the compensation consists of commissions, overrides or a share of the profit realized on orders solicited or sales resulting from the in-person solicitation of orders for and making sales of consumer goods in the home."

P3d 1139 (2013) (we review the department's factual findings for substantial evidence). With that explanation, we reject the first assignment of error without further discussion.

We state the facts consistently with the ALJ's findings, which, as noted, are supported by substantial evidence in the record. Vector is a national distributor of Cutco cutlery. It engages salespeople to perform demonstrations of its products in consumers' homes. Vector pays the salespeople a commission of between 10 and 30 percent (and more than 30 percent, in some cases) on the orders they obtain that Vector approves. Vector also promises some salespeople a minimum incentive payment per qualifying demonstration performed during a given sales period.[2] To the extent that the salesperson obtains orders for products, and, thus, earns a sales commission, during the sales period, the incentive payment is replaced by the sales commission.

At the hearing before the ALJ, Vector's Legal Affairs Manager provided an example of how the incentive payments work. If a salesperson had an incentive payment rate of $15 per qualified presentation and made 10 qualified presentations in a one-week sales period, the salesperson would receive at least $150—$15 for each of the 10 presentations—for that week regardless of whether he or she earned any sales commission by obtaining orders for products during that week. The incentive payment is reduced by the amount of the sales commission earned. The following three alternative scenarios illustrate that proposition. First, if the salesperson obtained no orders and, thus, earned no sales commission, the incentive payment for the week would be $150. Second, if the salesperson obtained $500 in orders during the week and had a 25 percent commission rate, then the salesperson would receive $125 in sales commission and would also receive an incentive payment of $25 to increase the total amount paid to $150. Third, if the salesperson

---

[2] The ALJ referred to the payments as "minimum commission"; the parties also use that terminology on review. The ALJ found that Vector "used the terms minimum commission, base pay, and incentive payments to describe payments made to sales reps under the minimum commission program." For clarity, we refer to the amounts paid to salespeople as compensation for demonstrations as "incentive payments."

obtained $1,000 in orders and had a 25 percent commission rate, the salesperson would receive $250 in sales commission and no incentive payment at all.

Between December 2011 and July 2013, the department issued a notice of determination and numerous notices of tax assessment against Vector. Eventually, the charges were consolidated for a hearing before an ALJ. At the hearing, the parties agreed that the payroll numbers and taxes that were the subject of the hearing related only to the amounts that Vector paid salespeople as incentive payments, not any amounts that were replaced by sales commissions. That is, the relevant assessments, and the hearing, related to the status of the difference between the sales commission (in the second scenario above, $125) and the promised minimum incentive payment for the number of demonstrations performed (in the second scenario, $150). Thus, in the second scenario above, the incentive payment amount that was at issue at the hearing would be $25.[3]

At the hearing, as relevant here, Vector contended that the direct-seller exception in ORS 657.087(2) excluded from "employment" the services for which it made incentive payments to salespeople—that is, the demonstrations. The department responded that services performed in exchange for the incentive payments were not excluded under ORS 657.087(2) and that, even if they were excluded by the statute, the incentive payments were nonetheless "wages" under OAR 471-031-0045, which defines "guaranteed wages." The ALJ concluded that the services that the salespeople performed for Vector were taxable employment to the extent that the salespeople were paid incentive payments on a per-demonstration basis; that is, the demonstrations were not entirely excluded from the definition of "employment" by ORS 657.087(2). The ALJ also concluded that OAR 471-031-0045 contains "additional definitions for purposes of ORS 657.087" and that, under that rule, the department

---

[3] On review, the department contends that the entire promised minimum incentive payment—in all three scenarios above, $150—should be taxed. As explained in the text, however, the record demonstrates that those additional amounts were not at issue in any assessment or at the hearing. Accordingly, we do not consider the department's argument that those additional amounts are subject to tax.

has "exempted" any guaranteed payments from ORS 657.087(2).[4]

On judicial review Vector contends that the ALJ misinterpreted ORS 657.087(2) and OAR 471-031-0045. We review the department's order for errors of law and substantial reason. *See* ORS 657.684; *Portland Columbia Symphony,* 258 Or App at 420. Because we conclude that the incentive payments do not fall within the exclusion from employment set forth in ORS 657.087(2), we affirm.

We begin with a brief overview of the relevant unemployment taxation statutes. ORS 657.505(2) provides that an "employer shall be liable for taxes on all wages paid for services performed" on a quarterly basis. "Wages" generally means "all remuneration for employment." ORS 657.105(1); *see also* ORS 657.115 - 657.140 (setting forth exclusions from "wages"). Thus, generally, an employer is liable for unemployment insurance tax on remuneration paid for "employment."

In addition to providing a general definition of employment, ORS 657.030(1) (employment means "service for an employer *** performed for remuneration"), the legislature has provided numerous categorical exclusions from employment. One of those exclusions is set out in ORS 657.087(2), which provides, in part:

"'Employment' does not include services performed:

"* * * * *

"By individuals to the extent that the compensation consists of commissions, overrides or a share of the profit

---

[4] As explained below, we conclude that ORS 657.087(2) does not exclude the incentive payments from the definition of employment. Because we are uncertain of the role that OAR 471-031-0045 played in the ALJ's analysis, we note that, at oral argument, the department conceded that, if a service is excluded from "employment" by ORS 657.087(2), the department's interpretation of its rule is implausible to the extent that it purports to make the remuneration for that service subject to taxation. We agree and accept that concession. *See Don't Waste Oregon Com. v. Energy Facility Siting,* 320 Or 132, 142, 881 P2d 119 (1994) (an agency's interpretation of a rule is implausible if it is "inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law," including a statute). Thus, the order was erroneous to the extent that it was based on the conclusion that, notwithstanding ORS 657.087(2), OAR 471-031-0045 made the incentive payments taxable. Nevertheless, our conclusion that ORS 657.087(2) does not exclude the incentive payments from the definition of employment compels affirmance of the ALJ's order.

realized on orders solicited or sales resulting from the in-person solicitation of orders for and making sales of consumer goods in the home."

Vector's arguments require us to interpret that provision. In doing so, we consider the text of the provision in context, as well as the legislative history of the provision, to the extent that it is useful, all in aid of ascertaining the intent of the legislature in enacting the provision. *State v. Gaines,* 346 Or 160, 171-72, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993). If the provision remains ambiguous after that analysis, we turn to general maxims of construction to resolve the ambiguity. *Gaines,* 346 Or at 172.

Vector first contends that the ALJ erred in concluding that ORS 657.087(2) did not exclude the incentive payments from the definition of "employment." Vector argues that, for several reasons, the legislature intended the term "commissions" in ORS 657.087(2) to encompass the incentive payments that Vector paid to its salespeople. After considering all of Vector's arguments, we conclude that, as explained below, the incentive payments are not "commissions" because they are not keyed to any transaction with a consumer.

We begin with the plain meaning of "commission." *See, e.g., State v. Dickerson,* 356 Or 822, 829, 345 P3d 447 (2015) ("When the legislature does not provide a definition of a statutory term, we ordinarily look to the plain meaning of the statute's text to determine what particular terms mean."). The parties agree, and we concur, that our construction of "commission" in *Martin v. DHL Express (U.S.A.), Inc.,* 235 Or App 503, 511, 234 P3d 997 (2010), which was based on dictionary definitions, is helpful here. In *Martin,* we held that "[t]he ordinary and legal definitions of 'commission' denote a payment that is a regular part of a salesperson's compensation, keyed to particular transactions." *Id.* at 511. Vector contends that, under that definition, its payments to salespeople for performing demonstrations are commissions because the term includes a flat fee for a service performed. In support of that view, Vector relies on

dictionary definitions of "commission," noting particularly the second example in the following definition:

> "[A] fee paid to an agent or employee for transacting a piece of business or performing a service <a broker receives a ~ on each share of stock bought for a customer> <a ~ of 50 cents for each car washed>; *esp* : a percentage of the money received in a sale or other transaction paid to the agent responsible for the business <a ~ of 9 percent on each sale>."

*Webster's Third New Int'l Dictionary* 457 (unabridged ed 2002).

As we have noted, Vector acknowledges that, in *Martin*, we explained that commissions are "keyed to particular transactions." 235 Or App at 511. Relying on the inclusion of "a commission of 50 cents for each car washed" as an example in the definition of "commission," Vector argues that the relevant transaction need not be a transaction with a customer. Instead, in Vector's view, a commission is any "flat fee for a service performed" for the principal. According to Vector, it then follows that, in this case, the incentive payment is a commission because it is keyed to the demonstration, which, as we understand Vector's view, is a transaction because it is a service performed on behalf of Vector.

We disagree that a commission includes all flat fees for services performed for a principal's benefit. The car wash example that Vector points to belies Vector's understanding that a transaction, and, consequently, a commission, exists whenever an agent performs a service for a principal and is paid a flat fee. In the car wash example, the car owner is the customer of the principal. Thus, the payment is keyed to a particular transaction *with a customer*—the transaction between the principal and the car owner. The same is true of the stockbroker example in the definition: The broker is paid a commission for performing a service—buying stocks—*for the customer.* That element is also expressly reflected in the latter part of the definition: "a percentage of the money received in a sale or other transaction paid to the agent *responsible for the business.*" *Webster's* at 457 (emphasis added). The relevant transaction is not between the principal and the agent; it is a transaction between the

principal and the customer, for which the agent is responsible. Thus, where the payment is not keyed to a transaction *with the customer*, the payment is not a commission.

Vector next contends that the legislature's understanding that "commissions," as that term is used in ORS 657.087(2), includes payments not keyed to a particular transaction with a customer is demonstrated through the fact that the text of ORS 657.087(2) ties "commissions" to "orders solicited." In Vector's view, the phrase "orders solicited" necessarily includes all solicitations for orders. Thus, by using "commissions" to describe certain payments on "orders solicited," Vector argues, the legislature demonstrated the understanding that "commissions" include payments made in exchange for requests for orders even when no orders result.

We disagree. "Orders solicited" refers to orders actually obtained, not orders merely asked for. Thus, the fact that ORS 657.087(2) contemplates that "commissions" will be paid on "orders solicited" does not provide a persuasive reason to depart from our conclusion regarding the plain meaning of "commission." If a salesperson asks for orders but receives none, then, as Vector correctly asserts, the salesperson has solicited orders. However, that does not answer whether, in using the phrase "orders solicited," the legislature referred to orders asked for (*i.e.*, solicitations for orders) or orders actually obtained through a request.

As set out above, the provision covers three kinds of payment "on orders solicited." Vector points out that, under the minimum commission program, the incentive payment is based on the act of soliciting—that is, the "ask"—rather than any actual order obtained. In Vector's view, payments "on orders solicited" are payments made in exchange for the "ask" because "orders solicited" refers to a request for orders, even though the request does not necessarily yield any orders. At the outset, we note that, if the legislature had intended that meaning, it could have specified that ORS 657.087(2) covers payments "on solicitations for orders." However, it did not do so. A more natural reading of the text that the legislature did employ—"orders solicited"—requires the payment to be "on" the noun, not the adjective—payments "on *orders*."

The next question is what it means for orders to have the characteristic of being "solicited."

If "solicit" meant only "to ask for," then perhaps a payment on an "order solicited" could plausibly be a payment on an order that has been asked for, notwithstanding that there is no actual order. The payment would be "on" the theoretical order that is the subject of the salesperson's request. As noted above, that would be more precisely described as a payment "on" a solicitation. However, "solicit" can mean not only "to approach with a request or plea (as in selling or begging)," but also "to move to action : serve as an urge or incentive to : INCITE." *Webster's* at 2169. Applying the latter definition of solicit, the phrase "orders solicited" refers to orders on which the salesperson moved the consumer to action—that is, orders that the salesperson actually obtained by inciting the consumer to make the orders. Under that definition, a payment "on orders solicited" is a payment on actual orders that a salesperson causes the consumer to make through his or her request. Accordingly, the fact that the legislature linked "commissions" to "on orders solicited" does not require a conclusion that "commissions" include the incentive payments, which are not keyed to a transaction with the customer.

We also disagree with Vector's contention that, if "orders solicited" refers to orders obtained, and not just orders sought during demonstrations, then commissions on "orders solicited" and commissions on "sales resulting from" the salespeople's efforts amount to the same thing. *See, e.g.,* *State v. Young*, 196 Or App 708, 713, 103 P3d 1180 (2004), *rev den*, 338 Or 583 (2005) ("Well-worn principles of statutory construction counsel us to avoid, if possible, interpretations that render portions of a statute redundant."). Those two phrases can describe different compensation arrangements: A salesperson could bring company-owned inventory to consumers' homes, perform demonstrations, and sell the inventory to consumers on the spot—the consumer pays for the knives and the salesperson leaves the purchased inventory behind when the salesperson leaves. A commission on that transaction would be a commission on sales resulting from the salesperson's efforts. Alternatively, the salesperson

could bring no inventory to the consumers' home. After the demonstration, the consumer could fill out an order form and the salesperson could be paid a commission on the order reflected on the form. That payment would be a commission on "orders solicited" as we have interpreted the provision above.[5] It would not necessarily be a sale, however, because the commission would be paid even if the sale were never completed. Accordingly, our understanding of "orders solicited" does not render the provision redundant.

Thus, the text of the provision indicates that "commissions * * * on orders solicited" refers to payments based on transactions with consumers in which the consumer orders Vector's products. Both parties have proffered legislative history of ORS 657.087(2) in support of their arguments. We have considered those submissions and have also conducted our own review of the legislative history. However, we conclude that the legislative history is unhelpful in resolving the parties' dispute. *See Gaines*, 346 Or at 172 (noting that courts will give legislative history the weight that "the court considers to be appropriate" (internal quotation marks omitted)).[6]

Vector also argues that later-enacted federal and state statutes in other tax contexts should inform our understanding of ORS 657.087(2). Vector contends that, in enacting ORS 657.087(2), the legislature was, effectively, codifying a common understanding that door-to-door salespeople

---

[5] We express no opinion on whether Vector's sales commission arrangement with its salespeople—who fill out order forms and obtain payment information, but do not deliver the products—is based on sales or orders. The distinction is immaterial except insofar as it demonstrates that commissions on "orders solicited" means something different from commissions on "sales" as provided in ORS 657.087(2).

[6] Vector's legislative history arguments rest on its understanding of discussion of the bill in committee hearings, and that understanding appears to be based on the committee minutes. However, in this case, reference to the bill as originally drafted and the audio recordings of the relevant hearings demonstrates that the minutes do not fully reflect the content of the committee's discussion. As a result, Vector's arguments are not persuasive because they do not account for the discussion that actually took place at the hearings. For that reason, we recommend that parties making arguments based on legislative history refer to audio recordings of hearings rather than the minutes of those hearings for the substance of committee discussions. *Accord Wright v. Turner*, 354 Or 815, 823, 823 n 5, 322 P3d 476 (2014) (quoting the minutes for the substance of a statement by a bill's sponsor "[b]ecause no audio recording is available").

are independent contractors, and later-enacted statutes demonstrate the contours of that understanding. Vector asserts that the later-enacted statutes are "instructive in determining the legislature's intent in application of ORS 657.087(2)."

However, as Vector elsewhere acknowledges, our inquiry is into the intent of the legislature in enacting the provisions of a particular statute, in this case, ORS 657.087(2), and not into the intent of later legislative assemblies that did not amend the statute and not into the intent of the department in applying the statute. *See, e.g., Gaines,* 346 Or at 177 n 16 ("Ordinarily, only statutes enacted simultaneously with or before a statute at issue are pertinent context for interpreting that statute."); *Holcomb v. Sunderland,* 321 Or 99, 105, 894 P2d 457 (1995) ("The proper inquiry focuses on what the legislature intended at the time of enactment and discounts later events."). The fact that a general understanding that, Vector contends, existed when ORS 657.087(2) was enacted was later distilled into a "direct seller" exception to employment in other contexts does not shed light on the intention of the 1977 Legislative Assembly in enacting ORS 657.087(2).

Moreover, even assuming that the later-enacted statutes could illuminate the intention of the 1977 Legislative Assembly, their text is so different from the text of ORS 657.087 that it does not assist us here. Vector points out that 26 USC section 3508 and ORS 316.209(3) define a direct-seller exception from federal employment and income tax and state income tax, respectively. As relevant here, those two provisions are identically worded. They provide that no employee/employer relationship exists for services performed as a direct seller. One of the characteristics of a direct seller is that

> "[s]ubstantially all the remuneration (whether or not paid in cash) for the performance of the services [previously described, including selling, or soliciting the sale of, consumer products under certain conditions,] is directly related to sales or other output (including the performance of services) rather than to the number of hours worked."

26 USC § 3508; ORS 316.209(3).

Vector contends that "orders solicited or sales resulting from" in ORS 657.087(2) is analogous to "sales or other output (including the performance of services)" specified in those statutes. But the text of ORS 657.087(2) is not the equivalent of the text of 26 USC section 3508 and ORS 316.209(3). "Commissions *** on orders solicited or sales resulting" are not the same as remuneration that is "directly related to sales or other output." The other statutes do not use the phrase at the center of the parties' dispute here—"commissions *** on orders solicited"—nor does ORS 657.087(2) refer to "other output." In our view, those statutes demonstrate only that, after the enactment of ORS 657.087(2), Congress and the legislative assembly described a direct-seller exception to employment using words different from those chosen by the 1977 Legislative Assembly in ORS 657.087(2). That does not change our conclusion that the text of ORS 657.087(2) does not exclude the incentive payments from unemployment insurance tax.

Finally, we briefly address Vector's argument that, even if an incentive payment is not always a "commission[] *** on orders solicited"—specifically, even if the incentive payment does not qualify as a commission when the salesperson earns no sales commission during the sales period—the incentive payment paid to "bump" a sales commission up to the promised minimum incentive payment (in the second scenario above, $25) does qualify as a commission. That is so, Vector argues, because, when an incentive payment "is paid in connection with a sales commission, the amount is directly based on the sale made." We reject that contention without extended discussion. As we have explained, in order to be a commission, a payment must be keyed to a transaction with a customer. In the situation that Vector identifies, the amount of the incentive payment is related to the amount of the sales commission because it is the difference between the sales commission and the promised incentive payment. Nevertheless, the amount of the incentive payment is not a commission because it is not keyed to any transaction with the customer; instead, it is keyed to the promised minimum incentive payment—that is, as Vector acknowledges, it is pay for performing demonstrations, not pay for obtaining orders.

Ultimately, Vector's view is that compensation to its salespeople should be exempt from unemployment insurance tax regardless of whether the salespeople are paid a commission on sales or a fixed amount per demonstration performed; unemployment insurance tax should be consistent with other federal tax and state income tax. That may be the case. If it is, however, the Legislative Assembly must remedy the problem. In sum, the incentive payments that Vector paid to its salespeople on a per-demonstration basis were not "commissions * * * on orders solicited" and, accordingly, were not subject to the exception from "employment" set forth in ORS 657.087(2).

Affirmed.